# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN

GLORIA ANNETTE SCHULTZ,

                 Plaintiff,

v.

ANDREW M. SAUL,
Commissioner of Social Security,

                 Defendant.

OPINION AND ORDER

18-cv-447-wmc

Plaintiff Gloria Schultz seeks judicial review of a final decision of defendant Andrew M. Saul, Commissioner of the Social Security Administration, finding that Schultz was not disabled within the meaning of the Social Security Act. Schultz argues that the administrative law judge, Diane S. Davis, erred (1) by not properly considering the opinions of Nurse Practitioner Marcia Hagen and Psychologist and Vocational/Rehabilitation Expert Stephen Porter and (2) in assessing Schultz's credibility. The court held oral argument on this case on September 25, 2019, at which counsel for both sides appeared. For the reasons set forth below, the final decision of the Commissioner will be remanded for reconsideration consistent with this opinion.

## BACKGROUND[1]

On February 23, 2015, plaintiff Gloria Schultz filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income. Her claims were first denied on April 14, 2015, and again

---

[1] The administrative record ("AR") is available at dkt. #7.

denied at reconsideration on June 1, 2015. Upon Schultz's request, a video hearing was held before Administrative Law Judge Diane S. Davis on March 31, 2017.

On June 20, 2017, the ALJ issued a decision denying Schultz's claims. The ALJ assessed Schultz's alleged disability under the five-step framework set forth in 20 C.F.R. § 404.1520. The ALJ first found that Schultz met the insured status requirements of the Social Security Act through September 30, 2021, and had not engaged in substantial gainful activity since the alleged onset date, although the ALJ did note that Schultz had worked part-time. (AR at 21.) The ALJ also found that Schultz had the following severe impairments: asthma, degenerative disc disease of lumbar spine and obesity. (AR at 22.) Schultz was also found to have a number of other non-severe impairments. (AR at 22.) These impairments, the ALJ concluded, did not meet and were not medically equal to the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ next evaluated Schultz's residual functional capacity. As a part of her analysis, she considered the opinion evidence of multiple sources, including that of Stephen Porter and Marcia Hagen. The ALJ identified Porter as a psychologist and described Porter's evaluation of Schultz as a "psychological evaluation." (AR at 27.) She then considered Porter's opinion that Schultz could only work five hours per day, however, she accorded it "little weight," finding it "irrelevant to his evaluation" and beyond his expertise. (AR at 28.) More specifically, the ALJ found that Porter "administered a psychological evaluation, but gave physical restrictions for which he has not been deemed qualified to ascertain." (AR at 28.)

The ALJ also considered two opinions from Marcia Hagen, who was Schultz's primary care provider and a nurse practitioner. (AR at 28.) The first opinion was from February 2015, in which Hagen opined (among other things) that Schultz could work forty hours a week in a sedentary position; the second was from August 2016, in which she discussed other work limitations. (AR at 28.) While the ALJ acknowledged that Hagen was "familiar with the claimant's condition and course of treatment," she found both opinions to be lacking in detail and also observed that Hagen's February 2015 opinion was completed so that Schultz could receive unemployment. (AR at 28.) Therefore, the ALJ did not accord much weight to Hagen's opinions. (AR at 28.)

Although Schultz presented the ALJ with a more recent opinion in which Hagen found that Schultz could only work part-time (AR at 308), there is no indication that the ALJ considered it (AR at 27-29). The note was completed in February 2017, at the behest of Schultz's employer to describe Schultz's work limitations and opined that Schultz was "limited to 20 hours a week." (AR at 308.)

The ALJ ultimately found that Schultz could perform full-time light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with additional limitations on physical activity and exposure to environmental irritants. (AR at 25.) Given Schultz's residual functional capacity, and considering Schultz's age, education and work experience, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Schultz could perform. (AR at 30.) As a result, the ALJ decided that Schultz had not been under a disability as defined by the Social Security Act. (AR at 31.)

3

OPINION

On appeal, plaintiff argues that the ALJ erred (1) by not properly considering the opinions of NP Marcia Hagen and vocational expert Stephen Porter and (2) in assessing Schultz's credibility. Underlying these legal arguments is the factual dispute over Schultz's ability to work full-time (as opposed to part-time). This dispute is dispositive to the issue of whether or not Schultz was disabled, because an inability to work "8 hours a day, for 5 days a week, or an equivalent work schedule" would require a finding of disability. *See* SSR 96-8p; *Bjornson v. Astrue*, 671 F.3d 640, 649 (7th Cir. 2012).

Judicial review of a final decision by the Commissioner of Social Security is authorized by 42 U.S.C. § 405(g). A reviewing court must uphold a final agency decision that is supported by "substantial evidence" based on the "whole record." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). "A federal court may not decide facts anew, reweigh the evidence, or substitute its judgment for that of the Social Security Administration." *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). An ALJ need not discuss "every piece of evidence on the record"; however, she "may not ignore an entire line of evidence that is contrary to the ruling." *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003). "[T]he ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

I. **Opinion Evidence**

Plaintiff first contends that the ALJ did not properly evaluate the opinion evidence of Stephen Porter. Plaintiff's basic argument is the ALJ erred in pegging Porter as *just* a

4

psychologist as he was also a vocational expert, certified rehabilitation counselor, and a member of the American Board of Vocational Experts.

The regulations require consideration of available opinion evidence to determine whether an individual is disabled under the meaning of the Social Security Act. *See* 20 C.F.R. § 404.1520b. The weight accorded to an opinion is determined by an evaluation of specific factors. *See* 20 C.F.R. § 404.1527. One of the factors to be considered is a source's "specialty or area of expertise relating to the individual's impairment(s)." SSR 06-03p. Another factor to be considered is the consistency of the opinion with other evidence in the record. *Id.*

Here, plaintiff argues that the ALJ should have either evaluated Porter as a psychologist with a specialty in vocational/rehabilitation studies or simply as a vocational expert/certified rehabilitation counselor. By failing to recognize Porter's qualifications, plaintiff argues, the ALJ failed to comply with the regulatory requirements regarding weighing opinion evidence, which necessitates consideration of a source's relevant area of expertise. *See* SSR 06-03p.

This case is complicated by the fact that Porter's specializations were not entirely apparent from the record. Porter's evaluation of Schultz was described as a "Psychological/Cognitive/Vocational evaluation." (AR at 602.) At the top of this evaluation, his credentials are listed as "Stephen H. Porter Ph.D., V.E., C.R.C., A.B.V.E., Consultant." (AR at 602.) Plaintiff's cover letter to the evaluation labels the evaluation a "medical record" from Porter. (AR at 601.) Finally, Porter's evaluation comes up only briefly at the very beginning of the administrative hearing, when the attorney for plaintiff

5

states: "Dr. Porter's report in 4F, October 2 of 2015, he did a vocational assessment, and basically gave the opinion that she wasn't able to do full-time work; it was only about five hours per day is all she would be able to handle." (AR at 41.) No more was said about Porter or his opinion during the hearing.

Further, as defendant points out, it is not entirely clear that Porter's vocational/rehabilitation expertise does in fact make him any more qualified to opine on Schultz's physical restrictions. The regulations only require an ALJ to consider qualifications that are relevant to the source's opinion. SSR 06-03p (factors for considering opinion evidence include "[w]hether the source has a specialty or area of expertise *related to the individual's impairment(s)*") (emphasis added). The ALJ dismissed Porter's opinion because she concluded that as a psychologist he wasn't qualified to opine on Schultz's physical limitations; if his additional expertise didn't make him any more qualified to do so then the ALJ's error may have been harmless. *See Sahara Coal Co. v. Office of Workers Comp. Programs*, 946 F.2d 554, 558 (7th Cir. 1991) (harmless error doctrine applicable to judicial review of administrative action).

In oral argument, plaintiff contended that, to the extent the record was unclear or lacking with regard to Porter's qualifications, the onus was on the ALJ to develop the record. Defendant countered that a claimant represented by counsel, as Schultz was, is presumed to have made her best case, and also that the claimant is in the best position to draw the ALJ's attention to a source's relevant specializations. Both of these general propositions of law are, of course, supported by case law. *See Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir. 1997) (ALJ has basic obligation to develop a full and fair record, even

when plaintiff is represented by counsel); *Sears v. Bowen*, 840 F.2d 394, 402 (7th Cir. 1988) ("ALJ is entitled to presume that a claimant represented by counsel in the administrative hearings has made his best case.").

The court generally agrees with defendant that a claimant is in the better position to call an ALJ's attention to any relevant qualifications an opinion source might have. If the ALJ's only mistake had been to overlook Porter's vocational/rehabilitation expertise the court would likely have upheld the decision, at least without some effort by plaintiff to call the ALJ (or the Social Security Administration) to reconsider what she now contends was an obvious misapprehension of the scope of Porter's expertise.

Here, however, the ALJ also failed to consider NP Hagen's February 2017 opinion, which supports Porter's opinion that Schultz could only work part-time. As a result, although the ALJ considered two other opinions by Hagen, she overlooked her most recent opinion limiting Schultz to working twenty hours per week. (AR at 28, 308.) The court recognizes that Hagen's February 2017 note suffers from some of the same deficiencies as Hagen's other opinions -- it is fairly conclusory and was apparently completed for the purpose of giving Schultz's employer information regarding her limitations. (AR at 308.) Nevertheless, the ALJ's failure to even address this later opinion means that the court is denied the opportunity to review meaningfully the ALJ's analysis. *See Briscoe*, 425 F.3d at 351 ("[T]he ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review.").

At least as importantly, by not acknowledging Hagen's 2017 opinion that Schultz was limited to working twenty hours per week, the ALJ ignored the consistency of that

opinion with Porter's opinion that Schultz could only work five hours per day. *See* 20 C.F.R. § 416.927(d) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). Taken together, the ALJ's failure to consider Hagen's 2017 opinion combined with the fact that she overlooked Porter's apparent specializations meant that the ALJ ignored an important line of evidence that was contrary to her ruling. *See Golembiewski*, 322 F.3d at 917. Therefore, remand is necessary for proper consideration of both opinions.

**II. Subjective Symptoms**

Plaintiff's final argument is that the ALJ erred in assessing Schultz's credibility, which the court will refer to as Schultz's "subjective symptoms" in accordance with a 2016 policy interpretation by the Social Security Administration. *See* SSR 16-03p ("[W]e are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character."). The court must give the ALJ's findings regarding a claimant's subjective symptoms "special deference" and will only overturn the findings if they are "patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017).

Here, the ALJ concluded that Schultz's contentions regarding the "intensity, persistence and limiting effects of the[] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (AR at 26.) While the Seventh Circuit has repeatedly criticized this language, *see, e.g., Stark v. Colvin*, 813 F.3d 684, 688 (7th Cir. 2016), the ALJ's phrasing is not reversible error "if the ALJ otherwise identifies information

that justifies the credibility determination." *Moore v. Colvin*, 743 F.3d 1118, 1122 (7th Cir. 2014).

In this case, the ALJ identified sufficient information to justify her conclusion that Schultz's "contentions regarding the severity of, and the related functional restrictions, [of her symptoms] are not supported." (AR at 29.) Specifically, she pointed to records noting that Schultz's asthma was under good control (AR at 26-27), that she had no concerns about her sleep apnea after treatment (AR at 26), that she received good results from physical therapy for back pain and later didn't attempt further physical therapy (AR at 27), and that she had no difficulties working part-time (AR at 27).

To support her argument that the ALJ erred in assessing Schultz's subjective symptoms, plaintiff also points to a number of treatment notes documenting pain felt by Schultz as a result of her impairments. However, as defendant points out, these treatment notes do not contradict the ALJ's finding. The ALJ did not conclude that Schultz experienced *no* pain; rather, the ALJ's conclusion was that Schultz's subjective symptoms were not so severe, persistent or limiting as to prevent her from performing light work, given some limitations.

Of course, the ALJ apparently did *not* consider the credibility of Schultz's descriptions of her symptoms after benefiting from the full scope of Hagen's 2017 opinion and Porter's opinion regarding her inability to work full-time. While this omission does not lead to a finding that the ALJ's credibility assessment with regard to Schultz's subjective symptoms is "patently wrong," the ALJ may wish to revisit this issue in light of those opinions.

9

ORDER

IT IS ORDERED that: the decision of defendant Andrew M. Saul, Commissioner of Social Security, denying plaintiff Gloria Schultz's application for disability and disability insurance benefits and supplemental security income is REVERSED AND REMANDED under sentence four of 42 U.S.C. 405(g) for further proceedings consistent with the opinion set forth above.

Entered this 30th day of September, 2019.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge